# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL W. PATTERSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil No. 17-cv-179-JPG-CJP ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Michael W. Patterson seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Insurance (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in March 2014. He first alleged that he became disabled as of May 28, 2010. He later amended his onset date to November 5, 2013: the day after his prior application was denied. After holding an evidentiary hearing, ALJ Stuart T. Janney denied the application on December 31, 2015. (Tr. 19-31.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) The plaintiff has exhausted his administrative remedies and filed a timely complaint in this Court.

## Plaintiff's Arguments

Through counsel, plaintiff makes the following arguments:

1. The physical and mental RFC assessments were not supported by substantial evidence.
2. The ALJ failed to properly consider the VE's testimony about how his frequent healthcare appointments would affect his ability to work.

1

3. The credibility assessment was erroneous.

## Applicable Legal Standards

For purposes of DIB, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, the Commissioner must determine: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments

2

that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512–513 (7th Cir. 2009).

This Court reviews the Commissioner's decision to ensure that the Commissioner made no mistakes of law and that decision is supported by substantial evidence.  This scope of judicial review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).  Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but only whether the ALJ's findings were supported by substantial evidence and that the ALJ made no mistakes of law.  *See Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).  This Court uses the Supreme Court's definition of substantial evidence: "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for substantial evidence, the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).  While judicial review is deferential, however, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

**The Decision of the ALJ**

ALJ Janney followed the five-step analytical framework described above. He determined that Mr. Patterson was insured for DIB through December 31, 2014, and that he had not engaged in substantial gainful employment since the alleged date of disability.[1] He found that plaintiff had severe impairments of degenerative disc disease; left hip bursitis and pelvic osteopenia; cataract and corneal scarring secondary to a burn injury; exposure to anhydrous ammonia fumes with burns; asthma; seizure and hypomagnesemia; depression disorder NOS; anxiety disorder; and posttraumatic stress disorder. These impairments did not meet or equal a listed impairment.

The ALJ found that plaintiff had the RFC to perform work at the medium exertional level with a number of physical and mental limitations. Based on the testimony of a VE, the ALJ found that plaintiff was not able to do his past relevant work. He was, however, not disabled because he was able to do other jobs which, according to the VE's testimony, exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to plaintiff's arguments.

1. **Agency Forms**

Plaintiff was born in 1957. (Tr. 302.) He alleged that he was disabled because of shortness of breath, dyspnea with exertion, chest pain, low back and hip pain, hypertension, depression, anxiety, and vision problems. (Tr. 316.) He had worked as a fertilizer loader for an agricultural business, a carpenter, and a bartender. (Tr. 305.)

---

[1] The date last insured is relevant only to the claim for DIB.

In June 2014, plaintiff reported that he spent the day reclining because of pain and fatigue. He said he could not breathe without medication and had severe depression. He said he did not do household chores. He did not clean the house. His roommate did the laundry. He only went outside when it was necessary because of shortness of breath. (Tr. 335-337.)

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in December 2015. (Tr. 40.)

Plaintiff was six feet tall and weighed 147 pounds. He lived with a roommate. He lost his driver's license because of a DUI. He had been covered by Medicaid for health care since early 2014. He had a pending workers' compensation claim. He had not worked since 2010. (Tr. 43-44.)

Plaintiff was hurt in an on-the-job accident when a hose came loose from a tank of anhydrous ammonia and he was burned. He said he was unable to work because of pain in his back, shortness of breath, his lungs, and psychiatric issues. (Tr. 47-48). He was using a cane, which he made himself. He had foot surgery in April and still had some pain, especially when walking on hard surfaces. (Tr. 50.)

On a normal day, plaintiff did not do much of anything. He sat around and reclined. He did not read much because of vision problems. He had cataracts. He was not taking prescription pain medication. He thought that his breathing problems were related to his 2010 accident. He tried inhalers, but they did not work after a while. Walking thirty yards to the mailbox caused him to be out of breath. His roommate did all of the cooking and cleaning. (Tr. 51-54.) His doctors did not seem to be able to figure out why he had shortness of breath and chest pain. (Tr. 62.)

5

Plaintiff had depression and anxiety. He also had panic attacks and crying spells. (Tr. 58-59.)

Following plaintiff's testimony, a vocational expert (VE) testified. The ALJ asked the VE a hypothetical question that corresponded to the RFC assessment: a person who could do medium exertional work, limited to frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, and scaffolding; frequent stooping, kneeling, crouching, and crawling; and no concentrated exposure to vibration, environmental irritants, moving machinery or unprotected heights. He could only read large print. He could remember general work procedures and could understand and remember one and two-step instructions. He could persevere at and complete those operations for the two-hour segments that make up the workday. He could complete a normal workday and workweek on a consistent basis. He was limited to a low stress setting with only occasional interactions with coworkers and supervisors and no contact with the general public. He could adapt to simple changes in the workplace and could take public transportation to work.

The VE testified that this hypothetical person could not do plaintiff's past work. However, he could do other jobs such as dining room attendant, kitchen helper, and general helper. (Tr. 72-74.) If he were absent more than one day a month or was off-task for more than fifteen percent of the time, he could not hold a job. (Tr. 76.)

3. **Medical Records**

Plaintiff was burned on his face, eyes, left arm, left flank, and groin in the anhydrous ammonia accident in 2010. He also complained of shortness of breath. (Tr. 536.) Pulmonary function studies done in August and September 2010 were normal. (Tr. 570, 572.)

In December 2013, a CT scan of the chest showed no pulmonary infiltrates. There was very mild air trapping on the exhalation images. (Tr. 639.)

Plaintiff saw Dr. Donald Sandercock for left hip and back pain in February 2014. He walked without a limp. He was able to heel walk, but had difficulty toe walking. He could bend forward and backward to 45 degrees. He had tenderness to palpation in the left SI area and over the left greater trochanter. The diagnoses were trochanteric bursitis in the left hip and degenerative disc and degenerative joint disease in the lumbosacral spine. Dr. Sandercock administered a corticosteroid injection in the left hip and ordered an MRI of the lumbar spine. (Tr. 610-611.) The MRI showed moderate L5-S1 disc bulging with mild facet hypertrophy resulting in mild to moderate foraminal narrowing but no significant spinal stenosis. There were also "slight degenerative changes" at other levels. (Tr. 613-614.)

In March 2014, plaintiff reported that the injection relieved his symptoms for a while, but they returned. Dr. Sandercock referred him to pain management. (Tr. 609.)

Plaintiff began seeing Dr. El-Ansary, a pain management specialist, on March 17, 2014. On exam, the doctor detected trigger points involving the paraspinal lumbar and gluteal muscles bilaterally. The impressions were back pain likely related to lumbar facet joint arthropathy, and rule out sacroilitis. Dr. El-Ansary administered lumbar facet joint injections and trigger point injections in the gluteal muscles two days later. (Tr. 601-604.)

Plaintiff began seeing Dr. Kaushik Patel at the Christie Clinic for shortness of breath and wheezing in April 2014. (Tr. 648.) Dr. Patel ordered pulmonary function testing. In May 2014, he noted that Mr. Patterson's symptoms "are out of proportion to the findings on the PFT's." Dr. Patel prescribed plaintiff Symbicort. (Tr. 645-646.) In June 2014, Dr. Patel noted that plaintiff's pulmonary function tests showed normal flows. The lungs were hyperinflated, but resistance and diffusion were normal. A chest x-ray showed a few granulomas, but nothing else

of note. Plaintiff complained of exertional chest pain, so Dr. Patel referred him to cardiology for testing. (Tr. 642-643.)

A cardiac stress test done in July 2014 was negative. (Tr. 801-802.) Cardiac cauterization done in August 2014 showed normal coronary arteries. (Tr. 772.)

Dr. El-Ansary indicated a diagnosis of sacroilitis in September 2014 and gave plaintiff bilateral SI joint injections. In November, plaintiff reported that he had gotten no relief from those injections. Dr. El-Ansary gave him lumbar injections in October 2014. X-rays of the hips were negative in December 2014. Bilateral hip injections were done again in February and July 2015. (Tr. 906-914.)

Mr. Patterson saw Dr. Patel about his shortness of breath again in October 2014. Dr. Patel noted that his pulmonary function tests showed only mild air trapping and that cardiac work-up had been negative. He concluded that the etiology of plaintiff's problems was not clear and that he may have mild reactive airways disease related to exposure to anhydrous ammonia. He recommended that plaintiff continue using Symbicort regularly and an inhaler when needed. He offered a referral to a tertiary care center such as Barnes Jewish Medical Center. (Tr. 903-904.)

In February 2015, plaintiff returned to Dr. Patel, complaining of continuing shortness of breath and chest pain. Dr. Patel noted that there were "no clear cardiac or respiratory problems that we could find." Plaintiff had not acted on the referral to Barnes Jewish because he had problems getting there. Dr. Patel referred him to St. Louis University School of Medicine for a second opinion. He noted that plaintiff was anxious, and suggested that anxiety could be causing his problems. He referred him for a psychiatric evaluation. (Tr. 814-815.)

Dr. El-Ansary also saw plaintiff in February 2015. Plaintiff reported that the injections

8

had not given him much relief.  Dr. El-Ansary stated that plaintiff did not have "realistic expectations."  Plaintiff wanted to try another set of SI joint injections since he did get some relief from them.  (Tr. 813.)

Plaintiff began seeing Sharon Szatkowski, CNS [Clinical Nurse Specialist] in April 2015.  She diagnosed anxiety, depressive disorder, and posttraumatic stress disorder.  She saw plaintiff a total of five times through August 2015.  She prescribed a number of medications, including an antidepressant (Brintellix), an antipsychotic (Latuda), and Vistaril, which is used to treat anxiety.  She recommended that he see a counselor, which he apparently did not do.  On the last visit, she noted that he reported that he was doing a little better, but he "can not [sic] see it until it is pointed out to him that he is not crying all the time and not having panic attack[s] and he is sleeping better."  He reported that he still had nightmares, but less frequently, concentration was poor, and he got irritable at times especially if things did not go his way.  Plaintiff got angry easily.  (Tr. 917-936.)

### 4.  Consultative Psychological Exam

Jerry L. Boyd, Ph.D., examined plaintiff at the request of the agency in August 2014.  Plaintiff told Dr. Boyd that his mental health problems dated back to the anhydrous ammonia accident in 2010.  He had not had any mental healthcare at that point and was not taking any psychotropic drugs.  Plaintiff reported that he spent his days reading, cleaning the house, and spending time with his dogs.  He reported anxiety or agitation symptoms of stress and tightness in the chest, and shortness of breath.  Dr. Boyd diagnosed depressive disorder and PTSD.  (Tr. 760-764.)

**Analysis**

The Court first turns to plaintiff's challenge to the ALJ's credibility findings. Plaintiff argues, in part, that the ALJ erred in discrediting his claims about his subjective symptoms because they were not supported by objective evidence.

In general, the credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). At the same time, the ALJ's evaluation of the plaintiff's claims about his subjective symptoms is not immune from judicial review. Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

SSR 96-7p requires the ALJ to consider a number of factors in assessing the claimant's credibility, including the objective medical evidence, the claimant's daily activities, medication for the relief of pain, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, 1996 WL 374186 at *3.[2]

The ALJ is required to give "specific reasons" for his credibility findings. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). It is not enough just to describe the plaintiff's testimony; the ALJ must analyze the evidence. *Id*. *See also Terry v. Astrue*, 580 F.3d 471, 478

---

[2] SSR 96-7p was superseded by SSR 16-3p, 2016WL1119029. SSR 16-3p became effective on March 28, 2016. SSR 16-3P (S.S.A.), 2016 WL 12379544. SSR 16-3p eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." SSR 16-3P (S.S.A.), 2016 WL 1119029, at *1. SSR 16-3p continues to require the ALJ to consider the factors set forth above, which are derived from the applicable regulations. *Id.* at *5.

(7th Cir. 2009) (The ALJ "must justify the credibility finding with specific reasons supported by the record.")

The Seventh Circuit has recognized that physical symptoms may have a psychiatric origin; not all physical symptoms result from physical causes which can be objectively detected. *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). This does not mean, of course, that the ALJ can never consider the absence of objective medical evidence in weighing the accuracy of the plaintiff's claims. As the Seventh Circuit later explained, the error in *Carradine* was the ALJ's failure to appreciate the psychological origin of the plaintiff's symptoms. *Simila v. Astrue*, 573 F.3d 503, 518 (7th Cir. 2009).

The first reason ALJ Janney gave for his credibility assessment was that plaintiff's doctors "frequently note his alleged breathing symptoms being disproportionate to the objective findings." (Tr. 29.) In his review of the medical evidence, he highlighted the near normal results on the pulmonary function tests and normal cardiac workup. In describing Dr. Patel's last office visit, he said only that plaintiff appeared anxious, but had a normal exam and that the etiology of his alleged shortness of breath and chest pain was unclear. (Tr. 28.)

In his last office note, dated February 10, 2015, Dr. Patel did state that the etiology of plaintiff's shortness of breath and chest pain was unclear. He did not, however, suggest that he did not believe that plaintiff was experiencing those symptoms. Rather, he suggested that "[a]nxiety could be causing these symptoms." He offered plaintiff a referral for a psychiatric evaluation, which plaintiff accepted.

ALJ Janney failed to consider the possibility that plaintiff's shortness of breath and chest pain were caused by his anxiety, as suggested by Dr. Patel. Instead, he concluded that plaintiff's

11

claims about shortness of breath and chest pain were not true because they could not be substantiated by objective testing. This was an error. *Carradine,* 360 F.3d at 755.

It is evident that the ALJ relied heavily on the lack of objective findings regarding plaintiff's shortness of breath and chest pain. He said that plaintiff's doctors "frequently note his alleged breathing symptoms being disproportionate to the objective findings." He also said that the physical exams and pulmonary function tests were "wholly inconsistent with the claimant's allegations that he becomes short of breath on walking to the mailbox." (Tr. 29.) This reliance on the lack of objective evidence without considering a psychological origin for the symptoms was error, and the Court cannot conclude that the error was harmless here.

The credibility determination was erroneous and requires remand. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

It is not necessary to address plaintiff's other points, but, as in *Pierce*, the determination of plaintiff's RFC will require "a fresh look" after reconsideration of the accuracy of his statements about his subjective symptoms. *Id.*

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Mr. Patterson was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Michael W. Patterson's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is **DIRECTED** to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: NOVEMBER 21, 2017**

<u>s/ *J. Phil Gilbert*</u><br>
**J. PHIL GILBERT**<br>
**UNITED STATES DISTRICT JUDGE**